```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

**GWENDOLYN BLACKWELL, ET AL.**                          **CIVIL ACTION**

**VERSUS**                                                **NO. 05-2105**

**ST. CHARLES PARISH, ET AL.**                           **SEC. B(4)**

### ORDER AND REASONS

This matter came before the Court for oral argument today in consideration of Defendant St. Charles Parish and St. Charles parish President Albert Laque's Motion for Summary Judgment (Rec. Doc. No. 45). After considering the evidence, the law, and the argument of counsel,

**IT IS ORDERED** that Defendant's Motion For Summary Judgment is **GRANTED** in part and **DENIED** in part.

### *BACKGROUND*

Plaintiffs Gwendolyn Blackwell (Blackwell), Demona Harrison (Harrison)and Ophelia Wilson Walker (Walker) assert claims of race and age discrimination against Defendants St. Charles Parish, Albert Laque ("Laque") and St. Charles Parish Department of Community Services in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983. Plaintiffs claim Defendants' acts and omissions violated Plaintiffs' rights under the First, Fifth and Fourteenth Amendments to the constitution of

the United States.  Plaintiffs further asserted claims under Louisiana state law for intentional infliction of emotional distress and for the denial of due process in termination of rights afforded those with civil service status.

Plaintiffs are former employees of the St. Charles Parish Department of Community Services(DCS).  Blackwell began working for St. Charles Parish on or about September 13, 1993.  Harrison began working for St. Charles Parish on or about April 16, 1992.  Walker began working for St. Charles Parish in 1972.  Plaintiffs were terminated in June of 2004.

DCS affords social services to the community and is funded with federal and parish funds.  During Plaintiffs' employment, DCS employees did not enjoy civil service status and all except one DCS employee were African American.

In 1999, Plaintiffs worked with former St. Charles Parish councilwoman, Darnell Abadie (Abadie), to achieve civil service status for employees of DCS.  Abadie wanted to sponsor a Council resolution to request Civil Service status for DCS employees. Abadie met opposition and was told that her request should be made to the State Attorney General to determine whether such an action was legal.  Abadie argued that the request to the State Attorney General was unnecessary as the St. Charles Parish Home Rule Charter allowed the change to civil service status for DCS employees. Nonetheless, Abadie drafted and submitted a request to the Attorney

General.  In January of 2003, the Attorney General issued an opinion in favor of the Parish placing DCS employees in civil service.  Several meetings were held to consider the inclusion of DCS into civil service.  During one meeting in July of 2003, St. Charles Parish Board Chair cautioned that civil service consideration may result in a reduction in staffing.  Plaintiffs were in attendance and made no objections.  Subsequently, an ad hoc committee was formed to study the feasibility of the requested change in status.  In September of 2003, St. Charles Parish requested a proposal seeking bids from consultants to conduct a study and to prepare a report on DCS.  St. Charles Parish accepted Ledet Managing Consulting's ("Ledet") bid.

In 2003, Abadie ran for the political office of St. Charles Parish President against incumbent, Albert Laque ("Laque"). Plaintiffs called Abadie and requested lawn signs to support Abadie's campaign.  Laque was allegedly aware that Plaintiffs supported Abadie, expressed displeasure, and sent Herman Weston to ascertain why Plaintiffs had Abadie signs in their yards.[1] Plaintiffs did not receive their merit raises in 2003.

On May 24, 2004, Ledet issued a full report and recommendation after conducting employee interviews and analyzing DCS's positions considering workload, services provided, programs offered, and recent computerization.  Ledet determined DCS staffing exceeded

---

[1] Declaration of Herman Weston, p.2.

that which was necessary to efficiently operate the department. Consequently, Ledet recommended a reduction of three full-time positions.

On June 11, 2004, Parish President Laque wrote a letter to Chairman Breaux proposing civil service inclusion of DCS and eliminating Plaintiffs' job positions.  Six of the seven DCS positions approved for inclusion in civil service were held by African American females.  The seventh position was held by a caucasian female.

Defendants claim Plaintiffs have no evidence of racial discrimination, age discrimination or conduct in violation of Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, the First, Fifth and Fourteenth Amendments to the constitution of the United States.

Defendants contend the decision to terminate Plaintiffs' employment was supported by the findings in the Ledet study. Defendants further contend that Plaintiff Walker, the only Plaintiff pursuing an age discrimination charge, failed to file an EEOC charge and should thereby be dismissed. Defendants argue that Plaintiffs were not entitled to a hearing upon termination.  As non-civil service employees, Defendants contend Due Process rights were not violated.  Furthermore, Defendants contend Laque is entitled to qualified immunity.

Plaintiffs contend the employees of DCS were "de facto" civil service employees as the Parish Home Rule Charter provided civil service status for similarly situated employees. Plaintiffs contend Defendants were opposed to recognizing DCS employees as civil service employees because DCS traditionally consisted of black employees. Plaintiffs contend their termination was retaliatory as Defendants were dismayed with (1) Plaintiffs' pursuit of civil service status and (2) Plaintiffs' support of Abadie in opposition of Laque.

### *LAW AND ANALYSIS*

**A.  *Standard For Summary Judgment***

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N.*

*Texas,* 139 F.3d 532, 536 (5th Cir. 1998).  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.*  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

***Discrimination Claims Under Title VII, § 1981 and § 1983***

Plaintiffs Blackwell, Harrison and Walker asserted claims of race discrimination.  Plaintiff Walker further asserted a claim of age discrimination.  Discrimination claims are evaluated under the burden shifting analysis set forth in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  *Cervantez v. Bexar County Civil Service Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996); *Fanning v. Metropolitan Transit Authority of Harris County Texas*, 141 Fed.Appx. 311 (5th Cir. 2005).  Under *McDonnell*, Plaintiff must establish a prima facie case of discrimination.  *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005). To establish a prima facie case for discrimination, Plaintiff must "show he or she was:  (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated.  *Id*.  (citing *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001).  If successful, the burden shifts to the Defendant to proffer a non-discriminatory reason for the adverse

employment action. *Id.* If defendant successfully bears its burden, Plaintiff must then establish that Defendant's non-discriminatory reason was a "pretext of discrimination." *Id.*

### 1. Race Discrimination

Plaintiffs establish prima facie cases for racial discrimination. First, Plaintiffs are African American females and are members of a protected class. Second, the parties do not dispute that Plaintiffs were qualified for their positions. Third, Plaintiffs were subject to adverse employment action as they were denied civil service status and they were terminated from their employment. Fourth, there are material factual disputes regarding disparate treatment of Plaintiffs with other similarly situated caucasian employees in departments of St. Charles Parish. Furthermore, Plaintiff Blackwell presents proof of different treatment afforded to Grace Read ("Read"), a caucasian female, over Blackwell. Read joined the Department of Community Services after Blackwell and shared Blackwell's duties.

Defendants argue that Plaintiffs' positions were eliminated as part of the process to include DCS employees into Civil Service. Defendants offer Ledet's study in support of its argument as Ledet's report suggested that DCS staffing exceeded what was necessary to efficiently run DCS.

Genuine issues of material fact exist regarding whether Plaintiffs were treated differently from others similarly situated

based on race discrimination.  Plaintiffs present, albeit selectively, that similarly situated caucasian employees were recognized as civil service employees in accordance with the Home Rule Charter without enduring the procedural obstacles and threat of termination that Plaintiffs were subjected to.[2]  Furthermore, Plaintiffs contend Blackwell was more qualified than Read.  Whereas, Defendants contend the circumstances in which similarly situated employees were recognized as civil service employees differed from Plaintiffs' circumstances and St. Charles Parish's decision to recognize employees as civil service was not racially motivated.  Finding genuine issues of material fact exist,

**IT IS ORDERED** that Defendants' Motion For Summary Judgment as to Plaintiffs' racial discrimination claim is **DENIED**.

### 2.  Age Discrimination

Plaintiff Walker cannot establish a prima facie case for age discrimination.  Walker is (1) part of a protected class; (2) qualified for her position protected class and (3) subjected to adverse employment action.  However, Walker cannot establish that she was treated differently than others similarly situated because of her age as the single employee older than Walker was retained as a DCS employee.  Therefore,

---

[2] *See generally* Parish Home Rule Charter, Declarations of Grace Read and Declarations of Darnell Abadie

**IT IS ORDERED** that Defendants' motion for summary judgment as to Plaintiff's age discrimination claim is **GRANTED**.[3]

**3. National Origin and Gender**

Plaintiffs do not oppose Defendants motion for summary judgment as to Plaintiffs' claims of discrimination, national origin and gender. Therefore,

**IT IS ORDERED** that Defendants' motion for summary judgment as to Plaintiff's national origin and gender claims is **GRANTED**.

*First Amendment*

To prevail on a First Amendment employment retaliation claim, an employee must establish four elements:  (1) he/she suffered an adverse employment action; (2) speech involved a matter of public concern; (3) interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) speech motivated the employer's adverse employment action. *Salge v. Edna Independent School District*, 411 F.3d 178, 184 (5th Cir. 2005).  To determine whether the subject speech addresses a matter

---

[3] Defendants further proffer the argument that Walker failed to file a charge with EEOC and, therefore, all of Walker's claims should fail for failure to exhaust administrative remedies. *Julian v. City of Houston, Texas,* 314 F.3d 721 (5th Cir. 2002). Plaintiff Walker indicated in her deposition that she did not file an EEOC charge.  However, Walker appeared somewhat confused at that point in the deposition. Plaintiffs' counsel states in opposition that <u>all</u> Plaintiffs , in fact, filed EEOC charges.  Considering this disputed fact, in consideration for the motion for summary judgment, the Court will consider the facts in the light most favorable to the nonmovant and will consider Walker's remaining claims.

of public concern, the Court must determine the "content, form, and context" of given statements. *Id.* at 186. When a public employee addresses personal matters such as personnel disputes, that speech falls outside the scope of First Amendment protection. *Id.* However, "[w]hen the speech in question merely touches on an element of personal concern in the broader context of a matter of public concern. . . a court is not precluded from concluding that an employee's speech as a whole addresses a matter of public concern." *Id.*

Plaintiffs allege they were terminated because (1) they supported and participated in the cause to include DCS employees in civil service and (2) Plaintiffs supported Abadie's campaign against Parish President Laque.

Here, the Court must determine whether Plaintiffs engaged in protected activity under the First Amendment. First, the Court finds Plaintiffs' support and participation in the cause to include DCS employees in civil service addressed public concern. Defendants argue that Plaintiffs' objective in pursuit of civil service status was for personal gain and, therefore, did not address public concern. However, the Court finds Plaintiffs' argument that DCS was excluded from civil service solely because the department historically consisted of a majority of African American employees raises a broad context of racial discrimination addressing an area of public concern. Second, the Court finds

Plaintiffs' support for Abadie in a political campaign addressed public concern.  Therefore, Plaintiffs have asserted valid, albeit weak, First Amendment employment retaliation claims.

Genuine issues of material fact exist as to Plaintiffs were terminated as a result of their involvement in the civil service inclusion process and Laque's knowledge of Plaintiffs' support of Abadie's campaign.  Accordingly,

**IT IS ORDERED** that Defendants' Motion For Summary Judgment as to Plaintiffs' First Amendment claims are **DENIED**.

*Qualified Immunity*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages **insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.**"  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(emphasis added).

Plaintiffs allege Laque violated clearly established statutory and constitutional rights in his alleged conduct of terminating Plaintiffs employment based on: (1) Plaintiffs' participation in the process to include DCS employees in civil service and (2) Plaintiffs' support of Abadie's campaign in opposition to Laque's campaign.[4]

---

[4] See Declaration of Herman Weston

Genuine issues of material fact exist as to Laque's knowledge of Plaintiffs' support of Abadie's campaign and the degree of and intent of his involvement in the termination process. Accordingly,

**IT IS ORDERED** that Defendant Laque's Motion For Summary Judgment on the First Amendment claims and qualified immunity are **DENIED**.

*Equal Protection*

As elaborated on above, Plaintiffs claim they received disparate treatment from similarly situated employees of St. Charles Parish.

Genuine issues of material fact exist as to this claim. Accordingly,

**IT IS ORDERED** that Defendants' Motion For Summary Judgment as to Plaintiffs' Equal Protection claims are **DENIED.**

*Due Process*

An employee must have a property interest in continued employment created by law, contract, or understanding to assert a due process claim in connection with termination of employment. *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997).

Defendants argue that Plaintiffs were non civil-service at-will employees with no property interest in future employment.

Plaintiffs argue that they were in fact "de facto" civil service employees and, therefore, were entitled to due process upon termination.[5]

Considering the fact that the Home Rule Charter provided for civil service status for employees in departments such as the DCS and in further consideration of the genuine issues of material fact involved in the underlying racial discrimination and equal protection claims, the Court declines to dismiss Plaintiffs' Due Process claim summarily.  Accordingly,

**IT IS ORDERED** that Defendants' Motion For Summary Judgment as to Plaintiffs' Due Process claims are **DENIED.**

*Intentional Infliction of Emotional Distress*

Plaintiffs did not oppose Defendants motion for summary judgment as to Plaintiffs claim of intentional infliction of emotional distress.  Failure to address an issue constitutes waiver for summary judgment purposes.  *Pashby v. Letumcare, Inc.*, 2006 WL 2700697 (W.D. La. 2006).  Accordingly,

---

[5] No authority was cited in support of Plaintiffs' argument. Plaintiffs seek retroactive application of civil service benefits including due process. Plaintiffs contend that they were unjustly denied civil service status.  However, their alleged failure to timely assert civil service review of their dismissals and whether such actions would have been futile are contested factual issues.

**IT IS RECOMMENDED** that Defendants' Motion For Summary Judgment as to Plaintiffs' claims if intentional infliction of emotional distress are **GRANTED**.[6]

### *CONCLUSION*

The Court finds no genuine issues of material fact as to Plaintiffs claims of gender based discrimination, age discrimination and discrimination based on national origin. Therefore, Defendants' Motion For Summary Judgment is **GRANTED** in part as to said claims.  The Court further finds genuine issues of material fact exist precluding summary judgment on Plaintiffs' race discrimination, First Amendment, Equal Protection and Due Process claims.  Therefore, Defendants' Motion For Summary Judgment is **DENIED** in part as to said claims.  Finally, the Court finds genuine issues of material fact exist as to Laque's knowledge of Plaintiffs' protected activity and involvement in the adverse action.  Therefore, Defendant Laque's qualified immunity defense is **DENIED**.

New Orleans, Louisiana this 17th day of January, 2007.

UNITED STATES DISTRICT JUDGE

---

[6]The Court notes that the relief sought on remaining claims appear duplicative and encourages counsel to amicably address this issue and report back to Court in a joint submission **no later than February 1, 2007.**