# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GWENDOLYN BLACKWELL, DEMONA HARRISON AND OPHELIA WILSON WALKER | CIVIL ACTION |
| VERSUS | NO. 05-2105 |
| ST. CHARLES PARISH, ST. CHARLES PARISH PRESIDENT ALBERT LAQUE | SECTION "B"(4) |

## ORDER

On February 18, 2009, the Court heard oral argument on the **Defendants' Second Motion To Compel and For Sanctions (Rec. Doc. No. 115)**, filed by the Defendants, St. Charles Parish ("Parish") and St. Charles Parish President Albert Laque ("Laque") (collectively, "the Defendants"). Through this motion, the Defendants seek an Order compelling the Plaintiffs, Gwendolyn Blackwell, Demona Harrison, and Ophelia Wilson Walker (collectively, "the Plaintiffs") to do the following: (1) properly provide and/or produce information and documents in response to their First Request for Production of Documents; and (2) to provide complete, meaningful responses to the Defendants' First Set of Interrogatories. The Defendants also request the imposition of sanctions for the Plaintiffs' alleged insistent failure and outright refusal to supplement their discovery responses. The Plaintiffs filed Petitioners' Opposition To Motion To Compel, to which the Defendants filed a Reply Memorandum.[1]

---

[1] Rec. Doc. Nos. 121, 131.

I. **Factual and Procedural Background**

The Plaintiffs filed this action against the Parish and Laque alleging discrimination on the basis of race, gender, age, and national origin pursuant to Title VII of the Civil Rights Act of 1964. The Plaintiffs also raise claims under 42 U.S.C. §§ 1981 and 1983, the First Amendment, the due process clauses of the Fifth and Fourteenth Amendment, and Louisiana state law governing intentional infliction of emotional distress. All claims are based on alleged actions taken occurring during the course of the Plaintiffs' employment with the St. Charles Parish Department of Community Services ("DCS").[2]

The Plaintiffs, each of whom are African-American females, were employed by DCS up until June, 2004. During the course of their employment, DCS employees were not considered part of Louisiana's civil service system.[3] As a result, in 1999, the Plaintiffs obtained the assistance of councilwoman, Darnell Abadie ("Abadie"), to attempt to secure civil service classification for DCS employees.

The Plaintiffs' allege that their efforts were met with various forms of resistance, blatant and covert.[4] First, the Parish required the Plaintiffs to solicit the opinion of the Louisiana Attorney General regarding whether DCS employees were eligible for civil service classification.[5] Once the Attorney General confirmed the civil service eligibility of DCS employees in 2003, the Parish then solicited bids from consultants to undertake an independent evaluation of DCS.[6] Ledet Managing

---

[2] Rec. Doc. No. 1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

2

Consulting ("Ledet") won the consulting bid and proceeded with the requested evaluation.[7] Ledet's study was released in May of 2004, and the overall evaluation yielded a report which recommended the elimination of three full-time DCS staff positions.[8] Thereafter, in June of 2004, the three Plaintiffs were terminated from their positions with DCS. Following the Plaintiffs' termination, the remaining DCS employees received their official civil service membership classification.[9]

On July 18, 2006, during the course of discovery in connection with this action, the Defendants filed a Motion To Compel (Rec. Doc. No. 15) seeking an order compelling the Plaintiffs to respond to written discovery and requesting an award of attorney's fees and costs. The undersigned granted the motion in part and denied it in part on October 24, 2006, ordering the Plaintiffs to do the following:[10] (1) provide more specific information in response to Interrogatory No. 2, which sought the identification of all documents relating to claims or allegations made; (2) supplement the response to Interrogatory No. 4, which sought a list of medications taken, but only as it pertains to Ophelia Wilson Walker; and (3) supplement the responses to Interrogatory Nos. 5 and 6, which requested details regarding the Plaintiffs' efforts to obtain post-termination employment and information regarding any employment positions successfully obtained.

Thereafter, on November 30, 2006, the Defendants filed a Motion For Summary Judgment seeking to dismiss the Plaintiffs' claims and further asserting qualified immunity as to Laque.[11] On January 18, 2007, the district court granted summary judgment as to the Plaintiffs' age and

---

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]Rec. Doc. No. 29.

[11]Rec. Doc. No. 45.

nationality discrimination claims and the state law claims for intentional infliction of emotional distress, and denied the motion in all other respects.[12] The United States Court of Appeals for the Fifth Circuit later affirmed the district court's denial of the motion on qualified immunity grounds with respect to the race discrimination claims and reversed the district court's denial of the motion on qualified immunity grounds with respect to the denial of due process claims.[13]

The Defendants filed the instant motion arguing that the Plaintiffs have failed to cooperate in discovery matters for three months. Specifically, the Defendants argue that the Plaintiffs have repeatedly thwarted their earnest attempts to address remaining discovery issues and to schedule depositions in an effort to move the case forward.[14] The Defendants seek court intervention in the hopes of obtaining outstanding supplemental responses to the original discovery requests.

The Plaintiffs oppose the motion and argue that they have provided the Defendants with the requested information, emphasizing that, upon request and in compliance with this Court's Order, they supplemented their discovery answer for a fifth time on October 26, 2006, which was more than two years ago.[15] According to the Plaintiffs, the subject motion to compel is a mere ploy to delay the resolution of the Defendants' pending Motion for Summary Judgment (Rec. Doc. No. 114) filed January 21, 2009.

---

[12] Rec. Doc. No. 78.

[13] Rec. Doc. No. 100.

[14] Rec. Doc. No. 115-2, p. 2.

[15] Rec. Doc. No. 121.

4

## II. Standards of Review

### A. Scope of Discovery

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(c), discovery may be limited under the following circumstances: (1) if the discovery sought is unreasonably cumulative or duplicitous, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(c). In assessing whether the burden of the discovery outweighs the benefit, a court must account for the following: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.*

**B.      Discovery Sanctions**

Rule 37 of the Federal Rules of Civil Procedure authorizes courts to appropriately respond to and deal with parties which have disobeyed discovery orders. *Chilcutt v. U.S.,* 4 F.3d 1313, 1319-1320 (5th Cir. 1993). A "court's discretion in fashioning appropriate sanctions for parties who disobey their orders is quite broad, though not unlimited." *Id.*

Rule 37(b)(2)(A) provides that if a party fails to obey an order to provide discovery, the Court may: (1) direct that facts be established as the prevailing party claims; (2) prohibit the disobedient party from introducing information into evidence or supporting or opposing claims or defenses; (3) strike the pleadings; or (4) dismiss the action in whole or in part. Additionally, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(c); *see also* Fed. R. Civ. P. 37(d)(1)(A)(ii), (c)(1).

The Fifth Circuit has noted that sanctions under Rule 37 are "predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970); *see also*, *Marrocco v. General Motors Corp*., 966 F.2d 220, 224 (7th Cir. 1992) (reasoning that "sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant."). While "the Federal Rules do not explicitly provide an avenue to sanction attorneys who fail to comply with discovery orders . . . . there is no doubt" that a Court may exercise its inherent powers to sanction discovery abuses and to discipline attorneys who engage in

obstructive behavior. *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410-11 (5th Cir. 1993).

**III.     Analysis**

    **A.     Supplemental Discovery**

The Defendants argue that the Plaintiffs have refused to supplement and update their prior discovery responses as requested by them over the past few months. The Defendants indicate that they wrote letters to the Plaintiffs on October 27, 2008, December 2, 2008, January 7, 2009, and January 20, 2009, delineating the remaining deficiencies with respect to the Plaintiffs' discovery responses. The Defendants further note that they made multiple failed attempts to schedule discovery conferences for the purpose of amicably resolving the instant discovery dispute. However, they explain that counsel for the Plaintiffs unilaterally cancelled two Rule 37.1 discovery conferences which were properly scheduled to take place on December 12, 2008 and January 14, 2009, respectively. At the hearing, counsel conceded that no additional formal discovery has been sent to the plaintiffs in addition to these letters and communiques between counsel.

According to the Defendants, the Plaintiffs have failed to produce definitive responses regarding the following interrogatories and related requests for production:

    (1)    <u>Walker's Responsive Prescription/Medical Records</u> (Which, According To Walker, Are Located in Her Sister's Attic); and/or <u>Information Regarding the Destruction of Such Documents During an Alleged Fire</u> at Her Sister's Home;

    (2)    Information Regarding the <u>Date and Location of the Purported Fire</u> At Walker's Sister's Home, Including the Name of Walker's Sister;

    (3)    <u>Rejections Letters</u> From St. Charles Community Health, and <u>Other Employment Related Documents in Harrison's Possession</u>;

7

(4) Names and Addresses of <u>Blackwell's Pharmacists</u>, and an Indication As To <u>Whether Blackwell Has Also Used Additional Pharmacies</u> Other Than the One Previously Identified;

(5) Detailed <u>Information and Documentation about Blackwell and Harrison's Change in Employment Status,</u> Including the Nature of Their New Jobs, and Payment and Benefit Information;

(6) Documentation Supporting the Plaintiff's Claims for Monetary Damages Regarding Expenses Incurred, *i.e.,* <u>Private Schooling, New Job Expenses, and Credit Card Debt;</u> and

(7) Identification of and/or <u>Information Regarding Additional Witnesses</u>.

In addition to the aforementioned supplementation requests, the Defendants also complain that, with the exception of a few corrected grammatical mistakes, the Plaintiffs' discovery in its present form amounts to an improper "cut and paste" version of the previous insufficient responses. The Defendants argue that this directly contravenes this Court's October 24, 2006 Order, which required the Plaintiffs to provide "separate responses on behalf of each Plaintiff." The Defendants particularly emphasize that the response to Interrogatory No. 1 is "virtually identical in substance" for Demona Harrison and Gwendolyn Blackwell, notwithstanding the fact there is no plausible way the actual responses could be identical for these Plaintiffs.[16] Therefore, the defendants reject the Plaintiffs' adamant insistence on "standing by" their cut and pasted responses.

At the hearing, the Defendants also urged that the Plaintiffs' general objections to the discovery are baseless and inappropriate. They argued that, because the Plaintiffs failed to assert any specific objections, they are now prohibited from doing so as such objections would be

---

[16] According to the Defendants, the Plaintiffs have "failed to explain how *both* Harrison and Blackwell can make the same assertion at Interrogatory No. 1, paragraph 5 that Herman Weston '[s]topped to [sic] my home one evening before election to tell me Mr. Laque said he was not pleased with my sister having a Dee Abadie sign in her yard. (My sister was not even living in the home she was renting it).'" (Def. Reply Memo., Rec. Doc. No. 131, p. 4) (emphasis in original).

8

untimely. The Defendants argued that the Plaintiffs should be compelled to fully answer each Interrogatory and respond to each Request for Production, indicating which Plaintiff is so responding. The Defendants also argued that Ophelia Wilson Walker has failed to provide adequate explanation for the alleged loss of documents in her sister's attic and the alleged fire at that residence. Counsel argues that Walker has failed to provide any specific information with respect to the nature of the documents that may have been in the attic, whether they survived the fire, or if they could be obtained from another source.

The Plaintiffs contend that the Defendants' requests seek responses to questions that have already been answered. They further insist that the Defendants' requests for supplementation exceed the scope of the propounded discovery. They argue that the Defendants ask them to amend their answers, but have not indicated specific deficiencies in the Plaintiffs' previous responses. Nonetheless, the Plaintiffs respond paragraph by paragraph to the Defendants specified requests as outlined in the subject motion.

Regarding the request for supplemental documents from Walker, the Plaintiffs explain in their Opposition Memorandum that Walker "does not remember details of what was in [her sister's] attic" beyond what she provided during her deposition. As to the request for identification of Blackwell's pharmacies, the Plaintiffs highlight the fact that "defense counsel lives in Ormond Estates and therefore knew full well that the CVS on Airline Highway in Destrahan is the only CVS on Airline Highway in Destrahan."

In response to the remaining requests for supplementation, the Plaintiffs argue in Their Opposition Memorandum that they have already amended their discovery responses five times and insist that they already provided separate answers for each Plaintiff. Finally, the Plaintiffs

acknowledge their awareness of the duty to supplement, and they represent that any further information will be produced in due course. Counsel also asserted at the hearing that any known information has already been provided. Ultimately, the Plaintiffs maintain that the Defendants' motion to compel has absolutely no merit and should be denied.

For the reasons orally assigned, as supplemented herein, the Court finds that the Defendants' are entitled to additional information in verified answers from the Plaintiffs. First, each of the Plaintiffs are required to resubmit their answers to all of the interrogatories and responses to the requests for production without reference to general objections. Any specific objections thereto have already been waived. These answers and responses shall be **<u>verified</u>** and shall specifically indicate the particular answer of each Plaintiff, avoiding the tendency to combine answers or leave uncertain which Plaintiff is providing the information. If the Plaintiffs answers are not so clarified, the Defendants may be allowed to take depositions for the limited purposes of testing the veracity of those answers at the Plaintiffs' cost.

Next, with respect to the particular interrogatories and requests addressed by this Motion To Compel, the Court orders the Plaintiffs to provide the following information within two weeks of the issuance of this Order.

### 1. <u>Request for Production Nos. 1 and 6; Interrogatory No. 2</u>

Ophelia Wilson Walker shall determine whether any documents related to her answers to Interrogatories, or those questions asked at her deposition, survived the fire in her sister's home. Any such documents shall be provided to the Defendants pursuant to this order. In connection therewith, Ms. Walker shall also supplement her answers and responses to identify the specific nature of the documents believed to have been in the attic and whether any documents which did not

survive can be obtained from another source. Any documents produced in connection with this, or any other request, shall be Bates-stamped before producing same to the Defendants. Walker shall also provide the Defendants with the date and location/address of the fire.

   2.   **Request for Production No. 8; Interrogatory Nos. 3 and 4**

Gwendolyn Blackwell shall provide the address of the particular CVS pharmacy identified in her prior answers. She also shall provide a complete answer by indicating, if not already provided, which medications have been obtained from that pharmacy, the costs incurred, whether she has copies of the prescriptions filled there, and/or if the prescription forms issued by her physicians have already been provided through her medical records.

   3.   **Request for Production No. 9; Interrogatory Nos. 5 and 6**

Each of the Plaintiffs shall provide specific information on any and all employment she has held since her termination by St. Charles Parish.

As discussed at the hearing, the Plaintiffs are under an ongoing obligation to update their respective discovery responses. While counsel is under no duty to continually inquire of the Plaintiffs, counsel is under the obligation to provide information as it becomes known to him. While in the course of resubmitting the answers and responses ordered herein, counsel for the Plaintiffs shall assure that each Plaintiffs' answer is verified and current. Each Plaintiff shall sign and verify the answers to be her's individually.

   **B.   Discovery Sanctions**

The Defendants urge the Court to impose sanctions based on the Plaintiffs' persistent failure to provide updated discovery responses. They suggest that the Plaintiffs and/or Plaintiffs' counsel should be required to pay reasonable expenses incurred in the filing of this motion, including

attorney's fees. They also ask the Court to specifically order that any objections the Plaintiffs might have once had should be deemed waived.

The Plaintiffs, on the other hand, insist that the subject motion hinges upon bogus allegations of failed compliance. Hence, they urge the Court to deny the Defendants' motion.

After considering the arguments of counsel at the hearing, it appears that the Plaintiffs have not acted in bad faith based on counsel's representation that all information that is known to him has been provided. As shown by the exhibits, the Plaintiffs have attempted to supplement the answers as requested, though these answers were not satisfactory. The Defendants also concede that no other formal discovery methods have been utilized to obtain information which the Plaintiffs believe already has been provided. The Defendants have been instructed to submit additional formal discovery to the plaintiffs if information is believed to exist which the Plaintiffs' counsel contends is unknown to him (though may be known by his clients) or is outside the scope of original discovery. The record is clear, as already discussed with counsel at the hearing, that communication between counsel has been less than amicable. As it stands, it would be unjust to impose sanctions until the record demonstrates meaningful efforts to cooperate on both sides.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the **Defendants' Second Motion To Compel and For Sanctions (Rec. Doc. No. 115)** is hereby **GRANTED IN PART and DENIED IN PART.**

**IT IS GRANTED** as follows:

**No later than fourteen (14) days** from the signing of this Order, the Plaintiffs' shall provide verified supplemental answers and responses as set forth herein:

1. the Plaintiffs shall **resubmit answers to** each of the Defendants' **Interrogatories** and responses to the Defendants' **Request for Production of Documents**, including the supplementation ordered herein, without reference to general objections and to be signed and verified by each plaintiff to be hers individually;

2. As to **Request for Production Nos. 1 and 6** and **Interrogatory No. 2**, Ophelia Wilson Walker shall determine whether any documents related to her answers to Interrogatories, or those questions asked at her deposition, survived the fire in her sister's home. Any such documents shall be provided to the Defendants pursuant to this order. In connection therewith, Walker shall also supplement her answers and responses to identify the specific nature of the documents believed to have been in the attic and whether any documents which did not survive can be obtained from another source. Any documents produced in connection with this, or any other request, shall be Bates-stamped before producing same to the Defendants. Walker shall also provide the Defendants with the date and location/address of the fire;

3. As to **Request for Production No. 8** and **Interrogatory Nos. 3 and 4**, Gwendolyn Blackwell shall provide the address of the CVS pharmacy identified in her earlier response. She also shall indicate, if not already provided, which medications have been obtained from that pharmacy, the costs thereof, whether she has copies of the prescriptions filled there, and/or if the prescription forms issued by her physicians have already been provided through her medical records; and

4. As to **Request for Production No. 9** and **Interrogatory Nos. 5 and 6**, each of the Plaintiffs shall provide specific information on any and all employment she has held since her termination by St. Charles Parish.

**IT IS DENIED** as to the Defendants' **Request for Sanctions**.

New Orleans, Louisiana, this 4th day of March, 2009.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**